## Case No. 16,409.

### UNITED STATES v. STOWELL.

[2 Curt. 153; 1 18 Law Rep. 76.]

Circuit Court, D. Massachusetts.   Oct. Term, 1854.

INDICTMENT — MOTION TO QUASH — DISCRETION OF COURT — POWERS OF COMMISSIONERS — WARRANTS OF ARREST — POWERS OF DISTRICT ATTORNEYS.

1. It is within the discretion of the court to entertain a motion to quash an indictment, or to hold the defendant to plead in abatement, or demur.

2. An indictment under the 22d section of the act of April 30, 1790 (1 Stat. 117), must show by proper averments that the process was legal.
 [Cited in U. S. v. Cover, 46 Fed. 285.]
 [Cited in Com. v. Doherty, 103 Mass. 444.]

3. A commissioner empowered to issue a warrant under the statute of the United States of September 18, 1850 (9 Stat. 462), must be such a commissioner as is particularly described in that act, and consequently an averment in an indictment for resisting such a warrant, that it was issued by a commissioner of the circuit court of the United States, is not sufficient.
 [Applied in U. S. v. Wilcox, Case No. 16,692. Cited in U. S. v. Myers. Id. 15,847; Ex parte Lane, 6 Fed. 36; Pettibone v. U. S., 13 Sup. Ct. 546, 148 U. S. 197.]

4. An averment that a warrant was duly issued, is insufficient; the facts constituting the due issue must be set forth.

---

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

5. The want of an averment of the facts showing that the commissioner was authorized to issue the warrant, cannot be aided by referring to the records of this court.

6. That part of the 29th section of the judiciary act (1 Stat. 88), which provides that jurors shall be drawn from such parts of the district as the court shall direct, is not repealed by St. 1840, July 20 (5 Stat. 394), and is still in force.
 [Cited in U. S. v. Richardson, 28 Fed. 69.]
 [Cited in State v. Kemp, 24 N. W. 351, 34 Minn. 64.]

7. The district attorney has power under the control of the court, at any time before a jury is impanelled, to enter a nolle prosequi.
 [8. Cited in Confiscation Cases, 7 Wall. (74 U. S.) 457, to the point that United States courts will not recognize any suit, civil or criminal, as regularly before them, if prosecuted in the name and for the benefit of the United States, unless the same is represented by the district attorney, or some one designated by him.]

This was a motion to quash an indictment against Martin Stowell, for obstructing the marshal in the service of legal process. The obstruction complained of occurred during the proceedings for the rendition of Anthony Burns, in the year 1854.

Before CURTIS, Circuit Justice, and SPRAGUE, District Judge.

CURTIS, Circuit Justice. The grand-jury at the present term returned into court an indictment against Martin Stowell for obstructing the marshal of this district in serving legal process. The indictment is framed under the twenty-second section of the act of April 30, 1790. The accused having been arraigned, submitted, through his counsel, a motion to quash the indictment. It is within the discretion of the court to refuse to entertain such a motion, and put the party to plead in abatement, or to demur, in order to raise questions affecting the regularity of the finding of the indictment, or its formal or substantial sufficiency. In this case, the court being satisfied, on the presentation of the motion, and looking into the indictment, that some of the causes assigned therein, were proper to be discussed and decided in this form of proceeding, have, for the sake of convenience, allowed the counsel to present their views on all the questions, which, in their apprehension, it was proper to make; not intending, however, to depart from what we consider to be a sound rule, that questions admitting of doubt, and involving such difficulty as to require a protracted and elaborate examination, should not be decided in this form of proceeding, especially when the motion is not made till the jurors and witnesses are in attendance for the trial. Having given to some of the questions raised, that consideration which we have found necessary to a decision, I will now state the opinion of the court thereon.

The indictment contains five counts. The first is the most full and particular, and an examination of that will render any extended observations on the others unnecessary. This count alleges, in substance, that the defend-

ant knowingly and willingly did obstruct, resist, and oppose the marshal of this district in serving and attempting to serve a certain warrant and order, which are set out in the count. The clause of the 22d section of the act of 1790, on which this indictment depends, makes it an offence knowingly, and wilfully to obstruct, resist, or oppose any officer of the United States in serving, or attempting to serve, or execute, any legal process whatsoever. To constitute an offence under this law, therefore, the obstruction must have been of legal process; and whatever may have been the form or purpose of the process, it is not legal process, within the meaning of this act, unless it emanated from, and was issued by, some tribunal, judge, or magistrate, authorized by the laws of the United States to issue such process. It is clear, also, that the indictment must show, by proper averments, that the process was legal, not only in form and purpose, but as emanating from some court or officer empowered by law to issue such process. What particular averments are necessary to show this authority to issue the process alleged to be obstructed, depends upon the character of the tribunal, or officer, from whom it came. If, as in this case, the officer who granted the process, had, by law, only a limited and special authority, dependent for its existence upon particular facts, every fact necessary to the existence of that authority, must either be averred in the indictment, or appear on the face of the process set out therein. Whether it be sufficient, that some of the facts necessary to the existence of power to issue the process, where the jurisdiction is special and limited, appear upon the face of the process itself set out in the indictment, but are not averred in the indictment to be true, so as to be traversed and put in issue by a plea of not guilty, it is not necessary in this case to decide. See Wise v. Withers, 3 Cranch [7 U. S.] 331; Elliott v. Piersol, 1 Pet. [26 U. S.] 340; Allen v. Gray, 11 Conn. 95; Savacool v. Boughton, 5 Wend. 170 (which contains an elaborate review of the cases); People v. Warren, 5 Hill. 440; 1 Russ. Crimes, 511; Fost. Crown Law, 311, 312; 1 Hale, P. C. 460. It will be seen, when we come to examine the indictment, that the defect, which we think exists in the averments to show authority to issue the warrant, is not aided, so far as the act of 1790 is concerned, by any thing on the face of the warrant itself.

The first count alleges that "heretofore, namely, on the twenty-fourth day of May, in the year of our Lord one thousand eight hundred and fifty-four, a certain warrant and legal process, directed to the marshal of the said district of Massachusetts, or either of his deputies, was duly issued under the hand and seal of Edward G. Loring, Esquire, who was then and there a commissioner of the circuit court of the United States, for said district; which said warrant and legal process was duly delivered to Watson Freeman, Esquire, who was then and there an officer of the United States, namely, marshal of the United States, for the said district of Massachusetts, at Boston, in the district aforesaid, on the said twenty-fourth day of May, in the year aforesaid, and was of the purport and effect following, that is to say: "United States of America. Massachusetts District, ss.: To the marshal of our district of Massachusetts or either of his deputies, Greeting:—In the name of the president of the United States of America, you are hereby commanded forthwith to apprehend Anthony Burns, a negro man, alleged now to be in your district, charged with being a fugitive from labor, and with having escaped from service in the state of Virginia, if he may be found in your precinct, and have him forthwith before me, Edward G. Loring, one of the commissioners of the circuit court of the United States for the said district, then and there to answer to the complaint of Charles F. Suttle, of Alexandria, in the said state of Virginia, merchant, alleging under oath that the said Anthony Burns, on the twenty-fourth day of March last, did, and for a long time prior thereto had owed service and labor to him, the said Suttle, in the said state of Virginia, under the laws thereof, and that, while held to service there by the said Suttle, the said Burns escaped from the said state of Virginia into the said state of Massachusetts; and that said Burns still owes service and labor to said Suttle in the said state of Virginia, and praying that said Burns may be restored to him, said Suttle, in said state of Virginia, and that such further proceedings may then and there be had in the premises as are by law in such cases provided. Hereof fail not, and make due return of this writ, with your doings thereon, before me. Witness my hand and seal at Boston, aforesaid, this twenty-fourth day of May, in the year one thousand eight hundred and fifty-four. Edward G. Loring, Commissioner. (L. S.)" These are the only parts of the first count material to the present inquiry, which is, not whether it could be proved on the trial, that Mr. Loring had authority to issue this warrant, but whether these averments are sufficient, in point of law, to show to the court that he had that authority.

The first section of the act of congress of September 18, 1850, taken in connection with the sixth section of the same act, confers power to issue warrants to arrest fugitives from service upon "the persons who have been, or may hereafter be appointed commissioners, in virtue of any act of congress, by the circuit courts of the United States, and who, in consequence of such appointment, are authorized to exercise the powers that any justice of the peace or other magistrate of any of the United States may exercise, in respect to offenders for any crime or offence against the United States, by arresting, imprisoning, or bailing the same, under and by virtue of the 33d section of the act of the 24th of September, 1789, entitled

'An act to establish the judicial courts of the United States.'" It appears, then, that to have authority to issue a warrant under this act of 1850, the person issuing it must not only be a commissioner appointed by a circuit court of the United States, but a commissioner thus appointed on whom have been conferred the powers respecting the arrest, imprisonment, and bail of offenders, which were conferred on justices of the peace by the 33d section of the act of 1789 (1 Stat. 91). That is, he must be such a commissioner as is particularly described by the act of 1850. Does the averment, that the person who issued this warrant was "a commissioner of the circuit court of the United States for said district," amount, in legal intendment, to an averment that he was such a commissioner as is particularly described in the act of 1850? If every person who is a commissioner of the circuit court, ex officio, possesses, by law, the powers as to arresting, imprisoning, and bailing offenders, granted to justices of the peace by the act of 1789, then it might be intended by the court that this commissioner had those powers, and, consequently, that he was one of those commissioners upon whom the act of 1850 conferred the power to grant such a warrant. But, on the other hand, if there may be commissioners appointed by the circuit court, who do not possess those powers, then an averment that a person was a commissioner appointed by this court, does not amount to an averment that he was such a commissioner as is described by the act of 1850, and therein empowered to issue warrants of this kind.

It was argued by the defendant's counsel, that this court issues commissions to take depositions in particular cases, and that the persons thus empowered are commissioners appointed by the circuit court. We feel some doubt whether persons acting under a dedimus potestatem in a particular case, are so far known to the laws of the United States as commissioners appointed by the circuit court, that we could say they might fairly, and would naturally, be included under those terms. But there is a class of commissioners appointed by the circuit court, not adverted to by the counsel, who are known to the laws of the United States as commissioners, and who do not ex officio possess the powers to arrest, imprison, and bail offenders against the laws of the United States. By the act of congress of August 12, 1848, § 1 (9 Stat. 302), passed to give effect to stipulations in treaties with foreign governments, for the extradition of persons charged with certain crimes, power to arrest and hold for extradition, is conferred, amongst others, upon. "commissioners authorized so to do by any of the courts of the United States." We think it clear that commissioners appointed for this purpose under this act, would not possess, ex officio, the powers to arrest, imprison, and bail offenders against the laws of the United

States. It is true, that it seems to have been the design of congress, when it has from time to time conferred new powers upon commissioners appointed by the circuit courts of the United States, to confer them upon that class of commissioners who were originally authorized to be appointed by the act of February, 1812 (2 Stat. 679), to take bail and affidavits in civil causes in the circuit courts; and, accordingly, by apt terms, the persons so appointed have been described, in subsequent laws, as those to whom the new authority was intended to be given. Acts March 1, 1817 (3 Stat. 350); August 23, 1842, § 1 (5 Stat. 516); August 8, 1846 (9 Stat. 72). In all these instances, as well as in the act of 1850, for the extradition of fugitives from service, the intention of congress is apparent, to confer power on that class of commissioners who had been or should be appointed to take bail and affidavits, &c. But the act of August 12, 1848, for extradition under treaties, does not confine the powers therein granted to commissioners who had been, or should be appointed to take affidavits and bail, or to arrest, imprison, or bail offenders against the laws of the United States. There is not only the absence of any such description of the commissioners who are to exercise the powers conferred by the act of 1848, but the sixth section provides, in terms, that "it shall be lawful for the courts of the United States, or any of them, to authorize any person or persons to act as a commissioner under the provisions of this act." By force of this act, therefore, there may be commissioners appointed by the circuit court for this district, to exercise the powers therein conferred, and those only. The averment that the person who issued this warrant, was a commissioner appointed by the circuit court, would be fully satisfied by proof, that he was thus appointed to make extradition under treaties, though he had no other power whatever. And it necessarily follows, that this averment does not show to the court that this was such a commissioner as had lawful power to issue this warrant, and consequently the indictment does not show that the warrant was legal process, because it does not show that it proceeded from one having lawful authority to issue it.

We have been referred to a precedent of an indictment for resisting an officer of the United States in the service of legal process, found in Whart. Prec. 567. That process issued from a district court of the United States, a court of record, and not technically an inferior court. All its jurisdiction and powers are matter of law, to be judicially noticed. The distinction between such a court and a magistrate having only a special authority, is settled. In favor of the jurisdiction of the latter, the law makes no intendment. 1 Saund. 70, note 3; 1 Chit. Pl. 306; Sackett v. Andross, 5 Hill, 330.

These principles of criminal pleading are so well settled, and their applicability to this

case is so clear, that no authority need be adverted to. But the case of Rex v. Everett, 8 Barn. & C. 114, is in point. That was an indictment for unlawfully soliciting one Hooper, a person employed in the service of the customs, to omit to make a seizure. The law did not make it the duty of all persons employed in the service of the customs, or confer on all such persons the power, to make seizures, but only on certain officers of the customs, and persons empowered for that purpose by the commissioners of customs. The indictment alleged, that Hooper was a person employed in the service of the customs, and that it was his duty in such employment to make a certain seizure. The defendant having been convicted, moved, in arrest of judgment, that the indictment did not show that Hooper could by law make a seizure. The court held the objection fatal; that it was not enough to aver it was the duty of Hooper to make the seizure; that the facts from which that duty arose must be stated; that as all persons in the service of the customs had not this power, and as no other fact besides his being in that service was alleged, the judgment must be arrested. In the case at bar, as in that case, only certain persons possess the power in question. It is not shown that Mr. Loring was one of those persons; and the allegation that the warrant was duly issued, does not help the indictment. Whether duly or unduly issued is a question of law, and the facts to constitute a due issue must be pleaded, that the court may be able to decide whether the issue of the warrant was duly or unduly made; just as in the case in 8 Barn. & C. 114, it was held not sufficient to aver that it was the duty of Hooper to make seizures, but the facts from which that duty arose should be averred. See, also, Rex v. Lyme Regis, Doug. 79; Everard v. Paterson, 6 Taunt. 625, 2 Marsh. 308.

It may be suggested that, inasmuch as the appointment of Mr. Loring emanated from this court, and is a matter of record here, the court may take judicial notice of the fact that he was authorized to act as a commissioner, in arresting, imprisoning, and bailing offenders against the laws of the United States, and so that he was such a commissioner as is described in the act of 1850. We suppose it to be true that Mr. Loring was such a commissioner, and that his authority could be proved by producing the record of his appointment; but this cannot affect the decision of the question now under consideration. An indictment must contain every averment necessary to show that an offence has been committed; and the want of any such averment cannot be supplied, by showing that the fact thus omitted appears on other records of the court. Suppose a conviction upon an indictment thus defective, were to be carried by writ of error to another court; the conviction must be reversed there, because the court of errors could have no judicial

knowledge of the omitted fact. Yet, if erroneous in the court above, it would be equally erroneous in the court below. The indictment must be sufficient of itself, when aided by those intendments which the law requires to be made from what appears therein; and it cannot be made good by merely extraneous matter, though that may be matter of record. It is true, this objection to the indictment is technical, and there does not seem to be reason to suppose, that in this case, the absence of this averment in the indictment can be of any practical consequence to the defendant, so far as respects the substantial merits of his case. But the rules of law which prescribe the essentials of a good indictment, are as binding on the court as the act of congress under which the indictment is framed; and the defendant has the same right to call on the court to give complete effect to the former, as the government has, to require the enforcement of the latter. For these reasons we are of opinion, that it does not appear by this first count that the warrant set out therein was legal process.

It has been made a question at the argument, whether the indictment shows that Burns was held, at the time of the alleged obstruction, under the original warrant, or under the order made by the commissioner on the adjournment, or under both. But as it is not shown by the count that Mr. Loring was such a commissioner as was empowered by the act of 1850 to hear and determine this subject-matter, it necessarily follows that it is not material in this case how that question should be decided.

Of the other counts in the indictment, it is necessary to say only, that neither of them is as full and specific as the first, and neither of them contains enough to show, that the process alleged to be obstructed was legal. One of them seems to have been framed in conformity with precedents under the laws of the states, for resisting, opposing, or assaulting an officer of the law while in the performance of his duty. But the act of 1790 requires that the officer should be resisted, obstructed, or opposed, in serving, or attempting to serve, or execute, some order or rule of a court, or some legal process. State officers, especially those who are guardians of the public peace, have many official duties to perform without process. They are protected by the laws under whose authority they act in discharging their duties; and offences may be committed against them, and consequently persons may be indicted therefor without alleging or proving that any legal process existed. So under the 8th section of the act of 1850, the offence of resisting or obstructing the claimant, or any one lawfully assisting him, either with or without process, is described; and an indictment under that section need not show that any legal process existed. But under the act of 1790, the resistance or obstruction of some legal process or

precept is the very gist of the offence, and therefore the indictment must show what the process or precept was, and must set forth such facts as, if true, would make the process legal. Our opinion is, that as neither of the counts in this indictment describes, by sufficient averments, any offence against the act of 1790, under which alone, the government claims that the indictment can be supported, it must be quashed.

This renders it unnecessary to decide the other questions which have been argued, and, with one exception, we desire to be understood as neither expressing nor intimating any opinion thereon. There is, however, one question which has been argued by one of the defendant's counsel, which so far affects both the past and present practice of the court that it would be unjust to the suitors to allow it to be supposed that any doubt can be raised concerning it.

At the October term, 1832, this court adopted a roster of towns and cities, from which jurors to serve in the circuit court were to be returned. This roster contained ten distinct tables of towns and cities, in which the name of the town or city was set down, and opposite each was placed the number of grand and traverse jurors who were to be drawn therefrom. One of these tables was to be used for each term, taking the tables in rotation as they stand on the roster. This practice has been followed, as we understand, from the adoption of the order to the present time. The roster embraces a large part of the maritime towns and cities of the state, and many others, whose local situation renders access to the place where the court is required by law to be held, comparatively cheap and easy. It excluded the more remote interior towns of the state altogether. In forming these lists of towns, this court was undoubtedly governed by that clause of the 29th section of the act of congress of September 24, 1789 (1 Stat. 88), which provided that jurors "shall be returned, as there shall be occasion for them, from such parts of the district from time to time, as the court shall direct, so as shall be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly to burden the citizens of any part of the district with such services." In the discharge of the duty thus made incumbent on the court by this act, our predecessors seem to have considered, as we have done, that inasmuch as a large part of both the civil and criminal cases tried here are of a commercial or maritime character, a jury drawn from commercial and maritime towns would be most conversant with such transactions generally, and best able to bring to their investigation that experience which would enable them most satisfactorily to decide such controversies; following, in this respect, as nearly as the circumstances will permit, the well-known maxim of the common law, recognized both in the constitution and laws of the United States, that a jury

should come from the vicinage; and also, that in drawing jurors from those cities and towns not remote from the place where the court is held, they would obey the other requirement of the statute, to avoid unnecessary expense. And, further, that the population of the towns and cities embraced in the roster was so great, and the number of the jurors and the length of their attendance necessary to do the business of the court, comparatively so small, that the inhabitants of those towns and cities would not be unduly burdened by the service.

It is now insisted, however, that it has been discovered by one of the defendant's counsel, that since the year 1849 this court has been pursuing an illegal practice by using this roster; that a jury summoned in pursuance of it is not returned according to the laws of the United States; and, consequently, that not only this indictment, but all presentments and verdicts here made or rendered, for a period of upwards of fourteen years, have been illegal and invalid. The supposed ground for attributing this very grave mistake to the court is, that by an act of congress of July 20, 1840 (5 Stat. 394), the clause of the 29th section of the judiciary act, under which the court has acted, was repealed. To ascertain whether this be so, it is necessary to examine the two statutes. The clause in the judiciary act of 1789 is as follows: "And jurors in all cases to serve in the courts of the United States shall be designated by lot or otherwise in each state respectively, according to the mode of forming juries therein now practised, so far as the laws of the same shall render such designation practicable by the courts or marshals of the United States; and the jurors shall have the same qualifications as are requisite for jurors by the laws of the state of which they are citizens, to serve in the highest courts of law of such state, and shall be returned as there shall be occasion for them, from such parts of the district from time to time as the court shall direct, so as shall be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly to burden the citizens of any part of the district with such services."

This clause provides for three things: (1) The mode of designating jurors, as by ballot, lot, or otherwise. (2) The qualifications of jurors, as age, citizenship, residence, &c. (3) The locality from which jurors, so designated and so qualified, shall be drawn. The first two are required to be governed, as nearly as may be, by the laws of the states, as they existed on the 24th day of September, 1789. The third is referred to the discretion of the court, to be regulated by the considerations as to impartiality, expense, and undue burden of the service, which are pointed out in the act. The third particular is that now in question, and the act of July 20, 1840, which is relied on as repealing this third provision, is as follows: "That jurors to serve in the

courts of the United States, in each state respectively, shall have the like qualifications, and be entitled to the like exemptions as jurors of the highest court of law of such state now have and are entitled to, and shall hereafter from time to time have and be entitled to; and shall be designated by ballot, lot, or otherwise, according to the mode of forming such juries now practised and hereafter to be practised therein, in so far as such mode may be practicable by the courts of the United States, or the officers thereof; and for this purpose the said courts shall have power to make all necessary rules and regulations for conforming the designation and impanelling of juries in substance to the laws and usages now in force in such states; and further, shall have power, by rule or order, from time to time, to conform the same to any change in these respects which may be hereafter adopted by the legislatures of the respective states for the state courts."

It is obvious, on even a cursory reading of this act of 1840, that it does not expressly repeal the former law, or any part of it; and, also, that it contains nothing touching the subject of the locality from which the jurors are to be drawn. It applies solely to the first two particulars embraced in the former law, namely, the mode of designating jurors, and their qualifications. It changes the law as to the mode of designation, and the qualifications of jurors in this: that whereas by the act of 1789, the laws of the states existing in September, 1789, were the only rules respecting qualifications and mode of designation, this act of 1840 adopts as rules of qualification and mode of designation, the law of the states which existed on the 20th day of July, 1840, and also any state laws which might thereafter be passed touching those subjects. The practical necessity for this change in the law is very apparent. The act of 1789 having reference only to the state laws then in existence, there were no rules on this subject in the new states, by force of any positive law. The necessity is met by the act of 1840, and there it stops. Neither in terms nor by any implication has it repealed the residue of the law of 1789, which confers a discretionary power on the court respecting the part of the district from which the jurors are to be drawn. It is a well-settled and familiar rule that the law does not favor repeals by implication, and a subsequent statute repeals a former statute by implication, only so far as the one is directly and necessarily repugnant to, or inconsistent with, the other. There is no repugnancy between these two acts as respects the locality from which jurors are to be drawn. Both may stand together without conflict or inconsistency. In the same 29th section of the act of 1789, occurs another provision respecting the locality from which jurors are to be drawn. It is as follows: "In cases punishable with death, the trial shall be had in the county where the offence was committed, or where that cannot be done without great inconvenience, twelve petit-jurors at least shall be summoned from thence." Certainly the act of 1840 has not repealed this clause. Yet there is as good ground for so arguing, as for the assertion that it has repealed the other direction contained in the same section respecting the locality from which jurors shall be summoned. Our clear opinion is, that so much of the act of 1789 as requires this court to determine from what parts of the district jurors are to be drawn, is still in force, and consequently this objection is without foundation.

Upon another objection to the indictment, grounded on the fact that the venire for the grand-jury was issued to, and returned by, the marshal, and that he was not an indifferent person within the meaning of the 29th section of the act of 1789, and that for this cause the court should, on motion, quash the indictment, after it had been received and filed, and the defendant had been put to plead thereto, we have formed no opinion. If it had been alleged that the marshal, or any other person concerned in returning the grand-jury, had been guilty of any unfair or improper conduct in forming the panel, we should have deemed it our duty carefully and promptly to investigate the charge. This would have been due to the purity of the administration of the law, which the court should most sedulously guard. But the objection has been rested merely upon the legal ground, that however fair in point of fact may have been the conduct of the marshal, he was not legally qualified to return this grand-jury. As the question, in the mode in which it is presented, is attended with difficulty, and as it is not necessary to a determination of the motion to quash the indictment, and as it does not affect the general practice of the court, we have thought it proper to reserve our decision thereon, until it shall need to be decided, and until it shall come before us unattended by the difficulties which arise from the time and mode of raising it. The result is, that the motion to quash the indictment for the cause that it does not appear therein that any offence was committed, must be allowed.

SPRAGUE, District Judge, remarked, that he concurred in the opinion delivered by Judge CURTIS. There were, he said, several kinds of commissioners, some of which have power to issue warrants for the arrest of persons escaping from service or labor, and others have not. This indictment does not show that this commissioner is one of the former class, and therefore it does not set forth that the warrant specified was issued by a competent authority. Several other questions have been presented, which would deserve very grave consideration, but it was not then necessary to decide them.

John P. Hale suggested that the same or-

der be issued in the cases of certain other defendants indicted for the same offence, whose counsel had argued to the court as in the case of Martin Stowell.

Mr. Hallett, U. S. Dist. Atty., objected; and said he would enter a nolle prosequi in each of the other cases. He insisted on his right to take this course, declaring that Martin Stowell was the only party arraigned, and his case the only one before the court. Whether, under this decision, it would ever hereafter be possible to frame any indictment to meet these cases, he said, would be a matter of future consideration; but at present he only asked the right which belonged to the prosecuting officer, of disposing of the indictments in the other cases.

C. M. Ellis insisted that justice required that the other cases should be disposed of upon the motions which had really been argued.

After some further remarks, Judge CURTIS said the court did not perceive that it can make any difference, now or hereafter, whether an entry be made that the indictment be quashed, or of nolle prosequi. The court understood that all the cases had been heard upon the motion; but, at the same time, as a general rule, the prosecuting officer has power at any time before a jury is impanelled, to enter a nolle prosequi. The court will not restrain this power, if he chooses to exercise it, in these cases. However, the motion must be made at this time, so that the court may see that the same rights are secured to the defendants as if their cases were included in this order.