[No. 230.   Decided January 12, 1892.]

## I. B. CUNNINGHAM, *Respondent*, v. SEATTLE ELECTRIC RAILWAY AND POWER COMPANY, *Appellant*.

APPEAL—INSTRUCTIONS—EXCEPTIONS—CARRIERS—EJECTION OF PASSENGER
—EXCESSIVE VERDICT.

Where instructions given at a trial are not numbered nor so designated that they can be distinguished, a general exception to the giving of them will not be regarded on appeal.

Where instructions requested by appellant are not contained in the statement of facts on appeal, they cannot be considered by the supreme court.

Where the conductor on a street railway car procures the arrest of a disorderly passenger, such act not being within the scope of the conductor's authority, and the railway company does not adopt his action, the company is not liable.

Where a passenger is forcibly ejected from a railway car for alleged disorderly behavior, a verdict for $1,500 in an action for damages is excessive, where $25 is claimed for personal injuries from the assault, and the balance for damage to his reputation and personal feelings, where the only proof of injury is his statement that the newspapers published an account of the matter, and that he had been pointed out as the man who had been put off the car.

*Appeal from Superior Court, King County.*

The facts are fully stated in the opinion.

*Wiley, Hale & Scott,* for appellant.

*Cole, Blaine & DeVries,* for respondent.

The opinion of the court was delivered by

STILES, J.—The appellant's points in this case are confined to two classes: (1) Exceptions to instructions asked and given.   (2) The excessiveness of the verdict and judgment.

As to the first class we can give no relief.  The instructions, although the most of them, according to the statement of the brief, were given at the request of one or the other party, are unnumbered and unseparated, and not in any way designated so that they can be distinguished, besides which they were not excepted to.  At the end of the court's charge this only occurs:

"Counsel for defendant: We except to the instructions given as requested by plaintiff, and also to the instruction refused as asked by defendant; also, further, to the order in which the instructions were given, the giving of the instructions asked by the defendant in advance of those asked by plaintiff."

This exception may have been intelligible to the court below at the time it was made, but it is obviously not so to us.  Since the argument, we observe some pencil marks scattered through the charge which might assist us to make a tolerable guess that certain portions of the charge were

given at the request of the plaintiff, and some of which we might find objectionable; but such doubtful lead pencil interlineations do not make a record for an appellate court. The statement of facts shows no request of the defendant refused by the court, although several are gravely argued in the brief.

But upon the other point we cannot in reason allow the judgment to stand. The respondent sued for damages for his expulsion from a passenger car of the appellant by the conductor, at ten o'clock at night. In his complaint he says that he was, without any fault or neglect on his part, assaulted and beaten, and forcibly and violently ejected from the car by the agents and servants of the appellant, and that immediately afterward the said agents and servants caused him to be arrested and taken to police headquarters, where he was compelled to give bail in twenty-five dollars, and was on the following day charged with disturbing the peace, tried and discharged. And he further says that by reason of the assault and battery upon him he was injured in the neck and shoulder to the extent of twenty-five dollars; that by reason of his arrest he had to pay out fifty dollars to an attorney, and that the injury to his reputation and the indignities heaped upon him have further injured him in a very large sum. The answer admitted the facts alleged in the complaint, except the arrest, including the expulsion from the car, and justified the treatment of the respondent on the ground that he was intoxicated, quarrelsome, abusive and obscene in his language in the presence of other passengers. The testimony showed that as the respondent was going home on board appellant's car, with a friend, the former gave the conductor ten cents and signed to him that he paid two fares. The friend paid his own fare, which was the second fare intended to be paid by respondent. After the conductor had reached his place at the rear of the car respondent called him forward and

demanded "change." Whereupon the conductor reminded him that he had indicated that he was paying two fares, and told him that he had "rung them up" so that they belonged to the company and he couldn't repay him. Up to this point both stories agree, but beyond there is a very wide divergence. Respondent claims that, although he merely argued with the conductor for the return of his five cents, the latter sharply told him that unless he "shut up" he would put him off the car. Respondent made no further remarks after the conductor retired, but his companion indulged in some facetiousness, when suddenly the conductor pounced upon the respondent and roughly put him out, in which action he was assisted by a passenger who was not at the trial. The conductor and some of the other passengers say that respondent became so abusive and used such obscene language that it became the former's plain duty to order respondent to cease or leave the car, or he not complying, to eject him, using no more force than was necessary. Respondent's witnesses, who were also passengers, did not hear the rudeness ascribed to him, and he denied it emphatically.

As the car stopped to let respondent off, a policeman stood by and inquired what he had been doing, to which the conductor answered that he was disorderly. The policeman took respondent to the station house, where he deposited money as bail and went home, arriving there about two hours later than he otherwise would. On his return trip the policeman asked the conductor if he would make a charge against respondent, but he refused. It did not appear that any charge was made by anybody, and he was dismissed upon appearance the next day. There was so little in his part of the case that the court below gave the jury no charge whatever in reference to it. It was not alleged or contended that it was within the scope of the conductor's authority confided to him by his principal to cause

the respondent's arrest, and it was not shown or attempted to be shown that the railroad adopted the action of the conductor in that respect, or knew of respondent's arrest until long after his discharge.   Under such a state of facts it could not be held liable for his arrest, even though it had been procured by the conductor, which was a fact very doubtfully proven.   *G. H. & S. A. Ry. Co. v. Donahoe,* 56 Tex. 162.

The jury evidently believed the respondent and his witnesses, and entirely rejected the testimony of the other side.   They had then for consideration, within the issues, respondent's claim for injury by the assault, of twenty-five dollars, and his further claim for damage to his reputation and personal feelings.   No proof whatever was submitted upon either side of these branches, except his statement that the newspapers published an account of the matter (presumably from the conductor's standpoint), and that he had been pointed out as the man who had been put off the street car.   It is inconceivable upon what theory of injury and compensation the jury could have allowed fourteen hundred and seventy-five dollars upon such a showing.   The law opens its doors to every man who is damaged by his fellow, and when a wrong is shown, damage is presumed.   But the law offers no more than compensation.   It holds out no premiums for litigation, and especially for speculative damage suits.   True, damages of this character are hard to estimate, and for this reason courts with great reluctance interfere with the verdicts of juries in such cases.   But when a jury returns a verdict with no possible basis of reason in the amount allowed, it is the duty of the court to set it aside, or modify it so that it shall not be excessive.   Here the respondent is a man of mature years, and of a respectable character which was not likely to suffer greatly from the hasty action of a young man conducting a street car.   Yet he receives an award greater by half than that in *Craker v. Chicago, etc., Ry. Co.,* 36 Wis. 657; 17 Am. Rep. 504, where the

plaintiff, a young woman, was indecently assaulted by a railway conductor, while a passenger in his car, the verdict there being for a thousand dollars, and reluctantly sustained by the court on account of its size. There was no actual injury in either case, but if we compare the probable feelings of the two sufferers, and the sense of indignity consequent upon the acts of the respective conductors, the compensation called for in the case at bar must be far less.

If the respondent, within thirty days from the filing of this decision, shall file with the clerk of this court his agreement to remit the sum of one thousand dollars from the judgment of fifteen hundred dollars obtained by him in the court below, the remainder will be allowed to stand; but upon his failure so to agree, the judgment will be reversed, and the cause remanded for a new trial. Appellant will, in any event, recover its costs of this appeal, excepting the expense of the statement.

ANDERS, C. J., and DUNBAR and SCOTT, JJ., concur.

HOYT, J.—I concur in the result, but think appellants should recover, as a part of their costs, the expense of the statement.