[No. 8611.  Department One.  May 21, 1910.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES F. NEWCOMB, *Appellant*.[1]

CRIMINAL LAW—APPEAL—RECORD—REVIEW—BILL OF EXCEPTIONS. While a statement of facts or bill of exceptions furnishes the only method of preserving exceptions for review, upon appeal from a conviction of murder in the first degree, the state's motion to strike such matter in the transcript as could only be brought up by bill or statement may be denied by the supreme court, and such exceptions reviewed as are sufficiently shown by the transcript and other matter not within the record.

COURTS—JURISDICTION—DEPARTMENTS. There being but one superior court in a county, it is not error to refuse to transfer a cause for trial from one department to another in which preliminary orders had been made, as the court has jurisdiction.

JURORS—SELECTION—JURY OF COUNTY—DISTRICTS. Const., art. 1, § 22, guaranteeing to accused the right to a trial before "a jury of the county," is not violated by Rem. & Bal. Code, § 94, which provides that the county shall be divided into jury districts, and that an equal number of the jurors shall be drawn from each district for service in any month.

CONSTITUTIONAL LAW—EX POST FACTO LAW—JURORS—SELECTION. An act changing the method of selecting jurors in criminal cases is not an ex post facto law, as it affects only the remedy or method of procedure.

CONSTITUTIONAL LAW—RIGHTS OF ACCUSED—CRIMINAL LAW—NOTICE OF NATURE OF OFFENSE—WAIVER. Const., art. 1, § 22, providing that the accused shall have a right to demand a copy of the charge against him, and Rem. & Bal. Code, § 2091, providing that such copy shall be served, merely grant a privilege that is waived by plea and entering upon the trial without request for the copy, service of which is not jurisdictional.

[1]Reported in 109 Pac. 355.

JURORS—QUALIFICATIONS—NAME. A juror, described in the jury list and summoned as, and answering to the name of, Hall Horton, who was examined and accepted by both sides as satisfactory without either side asking his name, was qualified and competent, notwithstanding his name may have been Horton Hall.

WITNESSES—IMPEACHMENT—EXPERTS—REPUTATION. It is not error to permit a medical expert to be impeached upon his general reputation for truth and veracity, the same as in the case of any other witness.

CRIMINAL LAW—TRIAL—SEPARATION OF JURORS. It is not error to allow jurors in a criminal case to separate during a recess after being selected, before they are sworn to try the case, as the statute applies only to juries selected and sworn.

CRIMINAL LAW—STATUTES—REPEAL—SAVINGS CLAUSE. The savings clause in the penal code of 1909 (Rem. & Bal. Code, § 2294), providing that nothing in this act shall apply to an offense committed before the day when this act shall take effect and that such offense shall be punished under existing laws as if this act had not been passed, is sufficient to continue in force the penal provisions repealed by the act until the date when the new act went into effect.

SAME. Rem. & Bal. Code, § 2006, passed at the extraordinary session of 1901, was a general savings clause applicable to the repeal or amendment of all criminal statutes unless a contrary intention is expressly declared therein, and is sufficient to continue in force the laws repealed by the penal code of 1909 during the interim between the passage and the taking effect of such penal code.

CRIMINAL LAW—TRIAL—INSTRUCTIONS—COMMENT ON FACTS—APPEAL—RECORD—STATEMENT OF FACTS—NECESSITY. In a prosecution for murder, an instruction that there is no evidence to justify a verdict of manslaughter is not improper comment on the facts, if such is the case; and error cannot be predicated thereon where the evidence is not brought up by bill of exceptions or statement of facts.

APPEAL—RECORD—INSTRUCTIONS. Error cannot be predicated on the refusal to give requested instructions when the instructions given are not brought up in the record.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered November 5, 1909, upon a trial and conviction of murder in the first degree. Affirmed.

*Murray & Lefebvre* and *A. A. Howell* (*Louis I. Lefebvre*, of counsel), for appellant.

*J. L. McMurray* and *A. O. Burmeister*, for respondent.

MORRIS, J.—Appellant was, on October 20, 1909, convicted of murder in the first degree, and upon entry of judgment upon such conviction, appeals to this court. Many of the assignments of error are not properly before us, inasmuch as there is no statement of facts nor bill of exceptions, which, under our practice, furnishes the only method for preserving exceptions for review in this court, when the same are properly certified to by the trial judge. For this reason the state moves to strike much of the transcript brought here by appellant. This applies, of course, only to such portions of the transcript as contain matter not part of the record in the court below, and to preserve which there must be either statement of facts or bill of exceptions properly certified by the trial judge. This motion is well taken, but from the nature of the case we will not grant it, but will review all exceptions where the transcript contains sufficient of the record, and other matter not within the record, to enable us to pass upon the questions involved.

The first error assigned is the refusal of the court to transfer the cause for trial to Department No. 1 of the superior court for Pierce county. This assignment was before us in the petition of appellant for a writ of habeas corpus, and was then held untenable. *In re Newcomb*, 56 Wash. 395, 105 Pac. 1042. The question then suggested was that the court was without jurisdiction. For the same reasons then advanced, we hold such refusal was not error.

Next, it is said the court erred in overruling appellant's challenge to the panel of jurors. The crime of which the appellant was convicted was committed in May, 1909. The jury law in force at that time provided that the jurors should be selected from a box containing the names of the qualified jurors of the county. By Laws 1909, chap. 73, page 131 (Rem. & Bal. Code, § 94), the method of selecting jurors was changed, as well as their qualifications, the new law providing for an additional qualification in that the juror should be a taxpayer, and further providing that each

county should be divided into not less than three nor more than six jury districts; that in July of each year the county clerk should make up a list of all the qualified jurors in the county, ascertaining the residence of each juror, and deposit his name in the jury box of the district in which he resided; that whenever a jury should be called in any county, the names of the jurors should be drawn in equal number from each jury box. This law went into effect in June, and the jury before whom appellant was tried was selected as provided for in the new act, Pierce county having, in accordance with the provisions of the law, been divided into three jury districts.

The appellant contends that the portion of the act dividing counties into jury districts is unconstitutional and void. We are aware of no provision of the constitution which this law violates. Article 1, section 22, of the constitution grants to each person accused of crime "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." The law in question does not attempt to provide for a jury from any division or district less than the whole county. The names of all the qualified jurors of the county are placed in boxes, arranged according to the district in which the juror may reside, and the jury, when drawn by the clerk for service in any month, is drawn in equal numbers from each box, thus providing each litigant and each person accused of crime a jury drawn from the entire county and not from any particular section or division of the county. Under the old law it would have been possible for all the jurors selected in any one month to come from the same section of the county. Had the old law been in force, appellant might have been tried before a jury all of whom resided in Tacoma, or in the precinct in which his crime is alleged to have been committed, and thus great difficulty been encountered in selecting a jury free from local prejudice. Under the law such a condition cannot

27—58 Wash.

exist, the jurors in equal numbers representing the three jury districts, and the opportunity for obtaining a jury free from local prejudice greatly increased. Such a jury is undeniably "a jury of the county."

Under the old rule of the common law, the jury was required to come from the vicinage or neighborhood of the place where the crime was alleged to have been committed, or the cause of action, if civil, arose; and it was a ground of challenge if some given number were not summoned from the hundred in which such place lay. This rule was gradually changed until the law was satisfied if the jury was returned from any part of the county; and the words "jury of the county," as used in our constitution, have never been held to mean more than that the jurors, when summoned, should come from some part of the county. The constitution, then, granting to appellant a trial before "a jury of the county," the jury before whom he was tried having been drawn from boxes containing the names of the qualified jurors in certain designated sections of the county, but the boxes together containing the names of all the qualified jurors of the county, and the panel being drawn in equal number from each box, the jury thus selected could be nothing less than "a jury of the county," and appellant's constitutional right to such a jury has in no sense been limited or abridged. The constitution of the United States, by the sixth amendment, provides that:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed."

Section 802, U. S. Rev. Stats., provides:

"Jurors shall be returned from such parts of the district, from time to time, as the court shall direct, so as to be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly to burden the citizens of any part of the district with such services."

The constitutionality of the latter statute has been sustained in the following cases: *United States v. Stowell*, 2 Curt. 153; *United States v. Richardson*, 28 Fed. 61; *United States v. Chaires*, 40 Fed. 820; *Agnew v. United States*, 165 U. S. 36.

It is contended in this connection that the new jury law is an *ex post facto* law, and for such reason bad. We cannot so hold. We know of no definition of an *ex post facto* law which this law violates. *Lybarger v. State*, 2 Wash. 552, 27 Pac. 449, 1029. It has never been doubted but that the legislature has ample power to make changes which affect only the remedy or method of procedure. These are not among the guaranties of the constitution in which litigants in civil actions or persons accused of crime can be said to have a vested right. The manner of selecting jurors from the body of the county, the impaneling of a jury in any given case, the·qualifications necessary, the grounds of challenge,—all these are merely regulative in their nature and belong to the matters affecting only the procedure under which the case or crime may be tried, and not the crime itself. *Stokes v. People*, 53 N. Y. 164, 13 Am. Rep. 492, wherein it is said:

"While the constitution secures the right of trial by an impartial jury, the mode of procuring and impaneling such jury is regulated by law, either common or statutory, principally the latter, and it is within the power of the legislature to make, from time to time, such changes in the law as it may deem expedient, taking care to preserve the right of trial by an impartial jury. . . . While no *ex post facto* law is valid, this has no application to the rules of evidence or the details of the trial."

The same rule is announced in Cooley's Constitutional Limitations (6th ed.), p. 326:

"But so far as mere methods of procedure are concerned, a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken

place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts, in existence when its facts arose."

Much the same language is used by the court in *People v. Mortimer*, 46 Cal. 114, and the cases announcing a like rule are almost too numerous to mention. Counsel for appellant, upon this charge of unconstitutionality, seems to lay great stress upon the opinion of this court in *State ex rel. Lytle v. Chehalis County*, 54 Wash. 278, 103 Pac. 464. We can find no common ground between the two cases. In that case the question discussed was the constitutionality of the act dividing counties into separate judicial districts, contrary to what we held to be the inhibition of the constitution in providing but one superior court in each county. There is no method provided for in the constitution for summoning jurors, nor does it attempt to define their qualifications. Hence such matters can be safely and properly left to legislative enactment.

It is next contended that the defendant should have been discharged for failure to serve a copy of the information upon him. This assignment is disposed of in what was said in *State v. Quinn*, 56 Wash. 295, 105 Pac. 818, where the same failure was held to be neither jurisdictional nor erroneous. We do not care to discuss the matter further.

The next assignment is made in connection with juror Horton Hall, or Hall Horton. In the list of jurors drawn for October appears the name of Hall Horton, residing in the second precinct of the 1st ward, Tacoma. Under such name an individual was summoned by the sheriff from such residence, and was called by such name to sit upon the jury being impaneled in this case. In response to the call "Hall Horton," the juror took his seat in the jury box. He was examined fully as to his qualifications, by both the state and the defense. Neither counsel asked his name. Being satis-

factory to both, he was accepted and sworn and sat as a juror throughout the trial. When he drew his warrant for services as such juror he receipted for the same as "Hall Horton, by Horton Hall." Appellant now contends such juror was not qualified, and his participation in the trial and rendition of the verdict should be ground for reversal.

We assume, from the fact that this juror was accepted by both the state and the defense, that he was in all respects competent and qualified to act as a juror. His name, whether Hall Horton or Horton Hall, neither added to nor detracted from those qualifications. The venire under which he was summoned called for an individual, not a name. That individual was described as residing at a particular place. As such individual he was summoned, appeared, and served. The individual intended to be served was actually served, the identical individual served appeared, and the same individual who appeared was drawn into the jury box and served. The person was in each instance the same. There was no confusion nor commingling of identities. It was an individual or person who was served and intended to be served; not a name. Each individual or person for convenience of designation is generally known by a distinct name, but the name does not make the person; it merely designates or labels him. The individual is the same, whatever the name may be. He may be known and called by as many different names are there are communities in which he may from time to time reside, but the individual does not change as does his name. He is the same in each instance. Appellant was entitled to be tried by a jury of twelve fair and impartial individuals or persons of Pierce county, possessing the qualifications of jurors. So far as this assignment goes, there is nothing to show that he was not.

Dr. Silliman was called as a medical expert by the defense, and the state in rebuttal called witnesses to impeach him upon his general reputation for truth and veracity. The ruling of the court in permitting such testimony over de-

fendant's objection is assigned as error. This is untenable. A medical expert, or any other expert, is subject to the same rule of impeachment as any other witness. He occupies no higher plane than the ordinary witness, nor does he stand on any different footing. The only difference is that he may be interrogated along hypothetical lines; otherwise he is subject to the same methods of examination and must subject himself to the same test of credibility.

Error is next predicated upon a charge that, after the examination of the jurors on their *voir dire* had been completed, a recess was declared, and that during this recess the jurors were permitted to separate. This was before the jury was sworn to try the case. This was not error. The statute providing that juries in criminal cases shall not be allowed to separate applies only to the jury selected and sworn to try the cause. Until that time has arrived, there is no jury within the purview of the statute. *State v. Clark,* *ante* p. 128, 107 Pac. 1047; *State v. Voorhies,* 12 Wash. 53, 40 Pac. 620.

It is next contended that, on May 14, 1909, when it is charged this crime was committed, murder was not a crime within the state of Washington. On March 22, 1909, what is now known as the new criminal code was approved by the governor, and became a law subject to the ninety-day provision of the constitution, which made the laws embraced in that code effective on June 8, 1909. Laws 1909, p. 890, ch. 249 (Rem. & Bal. Code, § 2253 *et seq.*). It is contended that, upon the passage of this new act, which defined murder in the first degree, the crime with which appellant was charged, the old statute defining such crime was repealed with no saving clause. So that, between March 22 and June 8, there was an open season for murder. We cannot subscribe to such a contention. Appellant is not justified in his contention that the act of 1909 contains no saving clause. Section 42 of the act of 1909, Laws 1909, p. 901 (Rem. & Bal. Code, § 2294), reads as follows:

"Nothing contained in any provision of this act shall apply to an offense committed or act done at any time before the day when this act shall take effect. Such an offense shall be punished according to, and such act shall be governed by, the provisions of law existing when it is done or committed, in the same manner as if this act had not been passed."

This is amply sufficient as a saving clause for all crimes committed between March 22 and June 8. Similar statutes have invariably been held good and sufficient as saving clauses. *Sanders v. State*, 77 Ind. 227; *United States v. Kohnstamm*, 5 Blatchf. 222; *People v. Gill*, 7 Cal. 356. Even though it could be held that this section was insufficient, we still have chap. 6 of the extraordinary session of 1901, page 13 (Rem. & Bal. Code, § 2006), which in effect is a general saving clause applicable to the repeal or amendment of all criminal statutes, unless a contrary intention is expressly declared therein. The validity of this act has been sustained in *State v. Fair*, 35 Wash. 127, 76 Pac. 731, 102 Am. St. 897, and *State v. Ames*, 47 Wash. 328, 92 Pac. 137, and was lastly given effect by this court in the review of a contention similar to that now before us in *State v. Hanover*, 55 Wash. 403, 104 Pac. 624, 107 Pac. 388.

The remaining errors go to the giving and refusing to give certain instructions. We have referred to the fact that no statement of facts nor bill of exceptions has been brought up. It has been the uniform holding of this court that instructions either given or offered and refused will not be reviewed, unless the same are preserved by statement of facts or bill of exceptions, except when the charge or request to charge is made wholly in writing. We have also held that, where the bill of exceptions does not contain all of the instructions given, the particular instructions complained of will not be reviewed, it being presumed that the error, if any, was cured by other parts of the charge; further, that instructions cannot be reviewed unless the evidence to which they pertain is

before us. *Thompson v. Territory*, 1 Wash. Ter. 547; *Cunningham v. Seattle Elec. R. Co.*, 3 Wash. 471, 28 Pac. 745; *Medcalf v. Bush*, 4 Wash. 386, 30 Pac. 325; *Patchen v. Parke & Lacy Mach. Co.*, 6 Wash. 486, 33 Pac. 976. The so-called record before us does violence to all these holdings. It is apparent from the record we have that the court gave forty-nine and one-half instructions, as numbered by it, while appellant sends up a record containing but five instructions. Again, he takes exceptions to twelve instructions, but the instructions are not before us except as he has embodied them in his exceptions. He also excepts to the refusal of the court to give four instructions, none of which are before us except in the language of his exception. It would be altogether too loose a practice, and more conducive to committing error than curing it, if countenance was given to such a method of submitting questions to this court and asking rulings thereon, as we have no way of determining what the instructions of the court were, nor of reviewing the instructions as a whole, which is essential to reviewing any one or more of them upon an assignment of error. Notwithstanding this, the grave import of this case impels us to overlook these rules of appellate procedure, and pass upon all contentions of error, in so far as we can do so. In this view, we have examined the instructions complained of. We cannot find error in them.

In instruction 28 the court told the jury there was no evidence to justify a verdict of manslaughter. This is assigned as error and as a comment upon the facts. The evidence not being before us, we can only discuss whether or no such an instruction is ever proper. We have held that such an instruction was proper and not a comment upon the facts, in *State v. McPhail*, 39 Wash. 199, 81 Pac. 683, in which case a large array of authority is cited in support of the holding. We cannot determine whether it was error to refuse the offered instructions, as the instructions not being before us, we are unable to say, assuming them to correctly

state the law, that the court, on its own motion, or upon request of the state, did not give instructions correctly stating the law intended to be covered by the offered instructions.

We do not wish our treatment of the motion to strike such portions of the transcript as are not properly part of the record in the court below, upon the failure to have them properly included in a statement of facts or some form of bill of exceptions, to be taken as a precedent, or as overruling those cases where similar motions have been granted by this court upon like grounds. We have said the motion was well taken, but considering the nature of the case and the judgment, we have not wished to interpose any technical ruling that would prevent an inquiry into whether or no appellant has had a fair and impartial trial and been convicted only upon the full preservation of all his constitutional rights.

Upon a careful review of all the errors assigned, we find no error, and the judgment is affirmed.

RUDKIN, C. J., GOSE, CHADWICK, and FULLERTON, JJ., concur.