[No. 7636.   Decided June 11, 1909.]

THOMAS MERCEREAU, *a Minor, by his Guardian Ad Litem,*
MATILDA MERCEREAU, *Respondent,* v. MAUGHLIN
MILL COMPANY, *Appellant.*[1]

MASTER AND SERVANT—NEGLIGENCE OF MASTER—SIGNALS—CONTRIB-
UTORY NEGLIGENCE—QUESTION FOR JURY. The negligence of a mill
company in starting up the mill without giving the customary signal,
and the contributory negligence of the operator of a ripsaw, a boy
seventeen years of age, in not throwing the saw out of gear by means
of an idler, are questions for the jury, where it appears that a signal
was given to stop the mill, and upon its stopping completely, the
plaintiff undertook to remove a stick lodged in the conveyor, and
that the mill suddenly started up whereby plaintiff's hand was cut
and mangled, and that it was customary to give two blasts of the
whistle before starting up the machinery.

SAME—DUTIES OF SERVANT—EVIDENCE—SUFFICIENCY. In an action
for injuries sustained by an employee while cleaning out a con-
veyor from a ripsaw, there is sufficient evidence that he was engaged
in the line of his duties, and that there was necessity to remove a
lodged stick, where it appears that he had been told to keep the
conveyor clean and the inference from the testimony was that he
had received these instructions from the foreman.

JURY—IMPANELING—DRAWING BY CLERK. Where, in drawing a
jury, the usual practice is followed, the ballots are taken from the
box by chance, and an impartial jury results, error cannot be predi-
cated on the manner in which the clerk conducted the drawing when
selecting the jury, the statute not being clear as to the exact method
of drawing.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered February 1, 1908, upon
the verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by the operator of a
ripsaw. Affirmed.

*R. S. Eskridge, Philip Tindall,* and *Brownell & Coleman,*
for appellant.

*Hathaway & Alston,* for respondent.

[1]Reported in 102 Pac. 232.

FULLERTON, J.—This is an action for personal injuries. The appellant is engaged in the business of manufacturing lumber. It employed the respondent, who was at that time just past his seventeenth year, to assist in operating a rotary ripsaw. This is a saw set in a frame resembling somewhat an ordinary edger, differing therefrom chiefly in the fact that it has but one saw on the arbor. Immediately under this particular saw was a conveyor, consisting of an endless chain with crosspieces fastened thereto, its use being to carry away the sawdust and other refuse that fell from the saw. In the forenoon of the day of the accident to the respondent, the respondent with one Sinclair had been engaged in ripping lumber on this saw. After completing the work Sinclair left for another part of the mill, and the respondent started to clean up the refuse that had gathered around the ripsaw while it was in operation. As the respondent was engaged in this work, the signal was given for stopping the mill, when it immediately slowed down, and, as the respondent testified, stopped completely. At this juncture the respondent observed a stick lodged in the conveyor immediately under the ripsaw. He reached for it and was in the act of removing it when the mill suddenly started without the usual warning, catching his hand on the ripsaw, and cutting and mangling it so badly that the surgeons found it necessary to amputate it above the wrist.

The machine was fitted with a belt tightener in the form of an idler pulley, so that the saw could be stopped while the main machinery of the mill remained in motion. The saw itself had no guard of any kind, although it was testified that it could have been guarded, without interfering with its efficiency, so as to prevent accidents of the kind here in question.

The respondent testified also, a matter that seems not to be disputed, that it was customary in this mill to give warning by two blasts of the whistle whenever the mill was started in motion after having been stopped, no matter for what cause,

and that this warning was not given at this particular time. The following also appears in the respondent's direct examination:

"Q. Then it was the custom to take sawdust and sticks and things from the edger and carry it to the big elevator? A. Yes, sir. Q. Where was the big elevator? A. Right off the main saw. Q. How far from the edger? A. About twenty-two feet. Q. And while you were doing that you noticed this particular piece that you have described on the elevator in the edger? A. Yes, sir. Q. Did you say that you caught hold of that stick, or not? A. I just put my hand in on top to get it. Q. And what happened then? A. The machine started up and I pulled to get out and it was cut off. Q. How tall are you, do you know? A. No, sir; not—— I don't know just how tall I am. Q. Your arms are unusually long for a boy of your age? A. Yes, sir, they are pretty long. Q. You weighed how much at the time of the accident? A. One hundred and sixty. Q. Had anybody ever shown you how to clean out under there? A. No, sir. Q. You had been told to keep that clean? A. Yes, sir. Q. But you were never told anything about whether it was dangerous and any particular way in which to do this work? A. No, sir."

The appellant's first contention is that the respondent was guilty of contributory negligence. It is said that before putting his hand under the saw he should have removed the idler so that the saw would have remained motionless even though the remaining mill machinery was put in motion. But it was for the jury to say whether under the circumstances the respondent had a right to rely on the fact that the customary signal would be given before the mill was started in motion. Had the usual signal been given, and had the respondent failed to get his hand away in time, then the risk would have been his own, but when he introduced evidence tending to show the custom of the mill as to giving warning before the machinery was started in motion, and that no warning was given in this instance, it became a question for the jury to say whether it was negligence on the part of the appellant to start the mill without giving the warning at this

particular time, and whether the failure of the respondent to remove the idler was, in view of the circumstances, such negligence as barred his right to recover. The cases of *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385; *Johnson v. Anderson etc. Lumber Co.*, 31 Wash. 554, 72 Pac. 107; *Bailey v. Mukilteo Lumber Co.*, 44 Wash. 581, 87 Pac. 819, and *Stratton v. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881, and the kindred cases cited by the appellant, do not sustain the contention it makes here. These were cases where the employee had a choice of ways in which to do his work, and voluntarily chose the unsafe way. In the case at bar, the method chosen to do the work was not in itself unsafe. It became unsafe because of the appellant's negligence in starting the machinery of the mill in motion without giving the customary warning, and the respondent owed no duty to protect himself against the negligence of the appellant—at least, these were questions for the determination of the jury, and should not be decided by the court as questions of law.

It is next insisted that the respondent's case is defective in the particular that no evidence was introduced tending to show that there was any occasion, "either by virtue of the general nature of his duties or as the result of any specific order," for the respondent to attempt to clean the conveyor under the saw. But this we think is refuted by the testimony of the respondent we have quoted from the record. It is true the examiner led the witness in a manner not to be commended on direct examination, but the witness does say that he had been told to clean out and keep clean the conveyor under the saw, and was not instructed as to any particular manner in which to do the work. Nor does he say in this connection by whom he was directed to clean out the conveyor, but earlier in his examination he had said he was put to work by the foreman of the mill company and received directions from him, and it is reasonably inferable, at least, that he referred to the foreman as the source from which he received his in-

structions. It is true, also, that he is contradicted in his statements on this point, but the jury had the right to believe either party, and since they found in favor of the respondent, this court must accept as true that version of the evidence which supports the finding.

Counsel argue further, that it was not made to appear that there was any necessity for the respondent to remove the stick; that it was not shown to be interfering at all with the operation of either the saw or the conveyor, or that it would not have been carried away as soon as the conveyor was put in motion; in fine, there was no reason why he might not have left it where it was. But the respondent was directed, if his evidence is to be believed, to keep the conveyor clean under the saw. This must mean clean from refuse material apparently lodged there as well as that actually so lodged. He cannot be held guilty of contributory negligence merely because he did not discriminate nicely in this respect.

It is assigned that the court erred in not discharging the jury on the appellant's motion made at the beginning of the trial. This motion was based on the manner in which the clerk conducted the drawing when selecting the jury. We have perused the evidence on this point with care, and are unable to discover that the clerk departed from the usual practice in this regard. The ballots were taken from the box by chance, and an impartial jury resulted. While the statute is not clear as to the exact method to be pursued, its purpose is to provide for a chance drawing from the box, and since this was accomplished, no prejudice resulted to the appellant.

The judgment is affirmed.

RUDKIN, C. J., DUNBAR, MOUNT, GOSE, and CROW, JJ., concur.