[No. 12035.  Department One.  November 16, 1914.]

THE STATE OF WASHINGTON, *on the Relation of H. P. Murphy, Plaintiff*, v. THE SUPERIOR COURT FOR WHATCOM COUNTY, *Respondent*.[1]

GRAND JURY—SELECTION—STATUTES. A grand jury is illegally drawn where the necessary seventeen grand jurors were arbitrarily selected by the court from forty of the attending qualified jurors drawn by the clerk by chance, as required by 3 Rem. & Bal. Code, §§ 94-4 and 94-5; since an essential in the selection of jurors is the element of chance, and the judge has no power in the matter except to pass upon their qualifications.

SAME—"IMPANELED" OR "DRAWN." While the statute, 3 Rem. & Bal. Code, §§ 94-4, 94-5, provides for the selection of petit and grand jurors by drawing names by chance without use of the word "impaneled," there is no such distinction between the words "drawn" and "impaneled" as here used, as to permit the judge to select without chance, a grand jury, in view of Const., art. 1, § 21, guaranteeing the right of trial by jury as a right inviolate, meaning as it existed at common law, and Rem. & Bal. Code, § 2099, subd. 5, especially rec-

[1]Reported in 144 Pac. 32.

ognizing the right to challenge the legal standing of a grand jury, and Id., § 2025, specifying as one ground of challenge, that the clerk had not drawn from the jury box the requisite number to constitute a grand jury, meaning the grand jury as finally selected.

SAME—SELECTING—METHODS OF DRAWING. A grand jury may be selected by the clerk's drawing a certain number from the jury list, and qualifying them singly until sufficient jurors are obtained; or all drawn might be first qualified, and a sufficient number drawn by chance to make up the grand jury.

Certiorari to review an order of the superior court for Whatcom county, Alston, J., entered March 17, 1914, in the matter of drawing a grand jury. Reversed.

*Newman & Kindall, C. W. Corliss,* and *John C. Higgins* (*Hyman Zettler,* of counsel), for relator.

*Frank W. Bixby,* for respondent.

CHADWICK, J.—This proceeding is brought to review an order of the superior court in and for Whatcom county, in the matter of the drawing of a grand jury. Relator was indicted, and moved to set aside the indictment upon the ground, among others, that the grand jury was not summoned, drawn, or impaneled as provided by law. This motion was denied.

The grand jury was selected in the following manner: Seventy-eight names were drawn from the jury lists. Six were not found. A certain number claimed exemption under the statutes, so that about forty remained. From this number, the judge presiding selected seventeen to serve as grand jurors. Upon examination, some of these were found to be disqualified or were excused, whereupon, the judge selected a sufficient number from those remaining to make up the number seventeen. The remainder, some eighteen veniremen, were excused without examination or the chance of being drawn as grand jurors.

It is provided in 3 Rem. & Bal. Code, § 94-4, that petit jurors shall be drawn by chance, "and before the drawing is made the boxes shall be shaken up so that the slips bear-

ing the names thereon may be thoroughly mixed, and the drawing of the slips shall depend purely upon chance."

"Whenever the judge or judges of the superior court of any county in the state shall desire to summon a grand jury, the names of persons to serve as grand jurors shall be drawn from the jury list, as hereinbefore provided." 3 Rem. & Bal. Code, § 94-5.

That it was the policy of the legislature to preserve the right to have an unbiased and unprejudiced jury and grand jury, and that no suspicion should attach to the manner of its selection in all cases, cannot be questioned. An essential element in selecting jurors is the element of chance. The English speaking people have found no better way and have made it the supreme test of sufficiency. Selection by chance has been indorsed by this court, speaking in harmony with an unbroken current of authority. *Mercereau v. Maughlin Mill Co.*, 53 Wash. 475, 102 Pac. 232; *State v. Barnes*, 54 Wash. 493, 103 Pac. 792, 23 L. R. A. (N. S.) 932.

In the *Mercereau* case, it was said:

"While the statute is not clear as to the exact method to be pursued, its purpose is to provide for chance drawing from the box."

The logic of this observation is that the court should not concern itself with methods, for there may be many methods adopted which would satisfy the law, but that it should insist that the jurors or grand jurors be selected by chance. In the case of *State v. Barnes*, the court quoted from the text of 24 Cyc. 218, wherein the general rule is laid down that methods may be directory, but the material thing, that the jurors should not be the product of arbitrary selection is so far mandatory as to give ground for challenge if it is not observed. When the statute has said, and this court has said, that a petit jury must be selected by chance and that grand jurors shall be drawn as "hereinbefore provided," it

means that the men who are called and sworn to serve as jurors or grand jurors shall be selected, whether in a preliminary way or finally, by chance. In this case, the judge directed the clerk to draw seventy-eight names. In the exercise of a sound discretion he excused a certain number. Out of the remainder, having forty names before him, the judge by his own act and judgment, made up the jury. We find nothing in the statutes or in any authority that has been called to our attention that gives a judge a right to draw or select either petit or grand jurors. At common law, jurors were selected by the sheriff, or by the coroner or by an elisor. The judge never named the jurors.

"As it was an essential principle of the jury trial from the earliest times, that the jurors should be summoned from the hundred where the cause of action arose, the court, in order to procure their attendance, issued in the first instance a writ called a *venire facias*, commanding the sheriff or other officer to whom it was directed, to have twelve good and lawful men from the neighbourhood in court upon a day therein specified, to try the issue joined between the parties. And this was accordingly done, and the sheriff had his jury ready at the place which the court had appointed for its sitting." Forsyth, History of Trial by Jury, p. 168.

Under modern practice, the jury lists are made up by an independent agency and are drawn by the clerk of the court. The only function the court has to perform is to pass upon the qualifications of the men so drawn and to make up a final panel for jury service.

It is earnestly contended that, inasmuch as there was a drawing of seventy-eight names from the jury lists, that the law is satisfied, notwithstanding the arbitrary selection by the judge of certain ones to be sworn as grand jurors.

Granting, for the sake of argument, that no real injustice has been done in this particular case, and that a fair jury was selected, to approve the method adopted by the court would be to permit a judge, if he so willed, to provide a grand

jury of his own choosing in every case under color of law. He might direct the drawing of every man on the jury lists of the county, and, having them so drawn, direct the sheriff to summon only certain favored ones, or he might direct the drawing of a certain number and then proceed to arbitrarily select the men he, and he alone, wanted to serve.

No cases are cited to sustain a practice so fraught with possibilities. In fact, methods which have, designedly or otherwise, circumvented the saving element of drawing by chance have been condemned by the courts and by public opinion whenever and wherever they have been resorted to. To review and quote from authorities would extend this opinion to an interminable length. The question has come before the courts in various forms, and our conclusion is sustained by the following cases: *State v. Beckey,* 79 Iowa 368, 44 N. W. 679; *Shepherd v. State,* 80 Miss. 147, 42 South. 544; *Boyd v. State,* 98 Ala. 33, 13 South. 14; *Viers v. State* (Okl. Cr.), 134 Pac. 80; *Risner v. Commonwealth,* 16 Ky. Law 84, 26 S. W. 388; *Curtis v. Commonwealth,* 23 Ky. Law 267, 62 S. W. 886; *Covington & C. Bridge Co. v. Smith,* 25 Ky. Law 2292, 80 S. W. 440. If there is any authority to the contrary, it has not been called to our attention nor have we been able to find it.

The main reliance of counsel, however, is in this: that there is a distinction between the words "drawn" and "impaneled;" that where the word drawn is used in the statute, it means the original drawing by the clerk from the jury lists of the county and that the jury may be impaneled by the arbitrary selection of the judge without doing violence to the statute. Counsel finds comfort in the case of *State ex rel. Gibson v. Gilliam,* 56 Wash. 29, 104 Pac. 1131, where the court, in discussing the time when those drawn to answer a summons for a grand jury should appear in court and be impaneled, referred to the act of drawing and the act of impaneling as if they were distinct things. They may be

distinct, for they have various meanings depending upon
their settings. While the word impaneled is not used in our
statute, it means, in common parlance, the proper selection
and qualification of those who make up the final jury, whether
it be a petit jury or a grand jury, but there is nothing in
that case holding or suggesting in any way that a jury
may be drawn or impaneled, using the words as meaning the
same thing, and in the sense of selecting or making up a
jury, by the act or choice of the judge.

When a jury is impaneled to try a civil case, the jurors
are drawn by lot out of the qualified jurors present. Rem.
& Bal. Code, § 323 (P. C. 81 § 557). Selection by chance
is the same thing, whether you call it drawing or impanel-
ing. The only difference is that the men drawn from the
jury lists are not yet tested as to their qualifications. Their
qualification depends upon examination. Impaneling means
that the veniremen have been qualified by examination and
sworn to perform their duties as jurors.

Inasmuch as the statute directs the manner of selecting
the names of petit jurors, counsel argues that there is an
omission of the law in that no such provision is made for the
selection of grand jurors, which justifies an arbitrary selec-
tion by the court. No such conclusion follows. If § 323
had not been written, a litigant might still insist upon his
right to challenge the array. The constitution, art. 1, § 21,
guarantees the right of trial by jury as a right inviolate.
This means, in the absence of a statute defining procedure,
the right as it existed at common law. The fairness attend-
ing the selection of a jury was the boast of the common law.
3 Blackstone, Commentaries, p. 354 *et seq.*

"The right of challenge is almost essential for the pur-
pose of securing perfect fairness and impartiality in a trial.
. . . In this country [England] the right has existed
from the earliest times." Forsyth, History of Trial by
Jury, p. 175.

10—82 WASH.

The right to question the legal standing of a grand jury has been especially recognized by statute. Rem. & Bal. Code, § 2099, subd. 5 (P. C. 135 § 1103), wherein it is provided that an indictment may be set aside if the grand jury were not selected, drawn, summoned, impaneled, or sworn as prescribed by law. This answers for the challenge of the common law, that right being preserved in form only as to "any person in custody or held to answer for an offence," Rem. & Bal. Code, § 2025 (P. C. 135 § 945), one of the grounds of challenge being that the "clerk has not drawn from the jury box the requisite number of ballots to constitute a grand jury." This means the grand jury as finally selected, and shows that the legislature had no thought that a grand jury could be selected in any way other than by a drawing from a box by the clerk "in the presence of the proper officers."

The manner of selecting grand jurors has been the occasion of some doubt, hence we feel warranted in saying that a grand jury might be selected in one of two very simple ways which are not inconsistent with the practice at common law and the usual statutory procedure. A certain number of names might be drawn from the jury lists. The clerk might be directed to draw the names of individuals and qualify them singly until a sufficient number of jurors were obtained and these might be impaneled as grand jurors. Or, the judge might direct that all of those answering the summons of the court should be examined as to their qualifications and, out of the number so qualified, the clerk should draw by chance a sufficient number to make up the grand jury.

We find nothing in the common law, the constitution, our statutes, or in the adjudicated cases, which will sustain the selection of the grand jury called by the respondent superior court in and for Whatcom county.

The judgment of the lower court is reversed, with directions to quash the indictment heretofore filed against the

relator on the ground that the grand jury returning said indictment was not drawn and impaneled as required by law.

CROW, C. J., and GOSE, J., concur.

MAIN and ELLIS, JJ., concur in the result.