17 P.3d 1184 (2001)
143 Wash.2d 115
STATE of Washington, Respondent,
v.
Jerry TWYMAN, Petitioner.
State of Washington, Respondent,
v.
Donald Vangeystel, Petitioner.
State of Washington, Respondent,
v.
Taye Yirdaw, Petitioner.
No. 68655-6.
Supreme Court of Washington, En Banc.
Argued September 26, 2000.
Decided February 22, 2001.
*1185 Seattle-King County Public Defender Association, Neil Martin Fox, Seattle, for Petitioners.
Norm Maleng, King County Prosecutor, Deanna Jennings Fuller, Deputy, Seattle, for Respondent.
BRIDGE, J.
Jerry Twyman, Donald Vangeystel and Taye Yirdaw were each convicted of criminal offenses in the Shoreline Division of the King County District Court, before juries drawn from pools selected from an area, consisting of three King County zip codes, generally coextensive with the Shoreline Division's electoral district. Arguing that the state constitution requires that jury pools be selected from King County as a whole, all three appealed to King County Superior Court where each case was affirmed. The Court of Appeals, Division One, granted discretionary review and affirmed the consolidated cases. Twyman, Vangeystel and Yirdaw then petitioned for our review. We granted review, and now affirm.

FACTS
The following facts are undisputed. Petitioners were tried before juries in the Shoreline Division of the King County District Court. In all three cases the pool of potential jurors was not chosen from the whole of King County, but rather was selected from three King County zip codes. These zip codes were roughly coextensive with the boundaries of the Shoreline Division's electoral district, but excluded some district residents and included Seattle residents from outside the district's population. Prior to trial, defense counsel for Twyman and Yirdaw moved to have the jury panels drawn from among the entire population of King County.[1] They argued that this was required by the state constitution. In both cases the motions were denied.[2] Twyman was convicted of obstructing a law enforcement officer and disorderly conduct, and Yirdaw was convicted of fourth degree assault.[3] Defense counsel for Vangeystel objected to the jury pool's composition after voir dire, but before testimony began.[4] Following a jury verdict finding Vangeystel guilty of fourth degree assault, his counsel renewed his objection for the record arguing that jurors should have been selected from all of King County, or, in the alternative, only within the exact electoral district of the Shoreline Division.[5] The judge denied counsel's motion.[6]
Following their convictions, the petitioners appealed to the King County Superior Court. Judge MacInnes affirmed Twyman's conviction,[7] and Judge Armstrong affirmed the convictions of Yirdaw and Vangeystel.[8] The Court of Appeals, Division One, granted discretionary review and consolidated the three cases. It found that while the state constitution clearly requires that "[i]n criminal prosecutions *1186 the accused shall have the right ... to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed,"[9] that requirement did not mean that the jury panel had to originate from the entire county.[10] Rather, it found that a statute allowing courts of limited jurisdiction to select jury panels from the population served by the court was reconcilable with the constitutional mandate, and was not materially departed from even where jurors originated from outside the Shoreline Division's boundaries.[11] It affirmed the convictions. The petitioners then sought our review, which was granted.

ISSUES
(1) Did the Shoreline Division of the King County District Court substantially comply with the statute governing jury selection?
(2) Is a statute constitutional that allows a district court to select a jury pool from an area less than the entire county in which an offense is charged?

ANALYSIS

I
The first question we are confronted with is whether the Shoreline Division of the King County District Court substantially complied with the statute governing jury selection. RCW 2.36.050 provides that:
In courts of limited jurisdiction, juries shall be selected and impaneled in the same manner as in the superior courts, except that a court of limited jurisdiction shall use the master jury list developed by the superior court to select a jury panel. Jurors for the jury panel may be selected at random from the population of the area served by the court.[12]
Petitioners contend that "the area served by" the Shoreline Division of the King County District Court is all of King County, and that RCW 2.36.050 was violated in each of their cases where the entire county did not serve as the source for prospective jurors. It is true, as the Court of Appeals recognized, that, for administrative purposes, the King County District Court has been reorganized into a single unit "consisting of geographic divisions rather than autonomous districts."[13] But the court was also correct in noting that "[i]t defies reason to assume that the Legislature would allow for a geographical narrowing of jury panel selection and then require the pool be taken from the county as a whole."[14] Indeed, state law provides that "a county that has a single district but has multiple locations for courtrooms may establish separate electoral districts to provide for election of district court judges by subcounty local districts."[15] Clearly speaking to King County, the statute then requires that "[i]n any county containing a city of more than four hundred thousand population, the legislative authority... shall establish such separate electoral districts."[16] Each of these districts "shall be so established as best to serve the convenience of the people of the district, considering the distances which must be traveled by parties and witnesses in going to and from the court...."[17] The King County judges themselves must reside in both the "district court district and electoral district."[18] Given all of this focus upon the localized nature of district courts, it would be quite incongruous if jurors were not also required to come from the district. While the King County District Court may technically be one court, *1187 its separate divisions make it clear that in any one case the "population of the area served by the court"[19] is that of the division in question.
Petitioners make much of the fact that drawing jurors in these cases from three zip codes only imprecisely paralleled the actual boundaries of the Shoreline Division, excluding some of those who lived in the electoral district and including prospective jurors from outside the district (i.e., Seattle). Yet, as the State notes, the court was working from a list randomly selected from the entire county and then selecting the jurors from the zip codes closest to the division.[20] This procedure was a fair approximation of the Shoreline Division's electoral district, i.e., "population of the area served by the court."[21] RCW 2.36.065 provides that "[n]othing in this chapter shall be construed as requiring uniform ... method throughout the state, so long as fair and random selection of the master jury list and jury panels is achieved."[22] Moreover, we have held that prejudice will be presumed only where there is a material departure from jury selection statutes:
The manner of making up the jury lists indicated by the statute is merely directory, and need be only substantially complied with.... The purpose of all these statutes is to provide a fair and impartial jury, and if that end has been attained and the litigant has had the benefit of such a jury, it ought not to be held that the whole proceeding must be annulled because of some slight irregularity....[[23]]
Here "[t]here is no suggestion that there was any exclusion of any class of citizen or weighting of the jury list or that the jury list was not a representative cross section of the community."[24] Nor is there any "showing or argument that the jury list, the venire or the jury itself was so composed that there might have been any inherent bias or prejudice against"[25] the petitioners or that petitioners were denied their "right to challenge any juror for bias or peremptorily."[26] With no "gross departure from the statute" demonstrated, the burden is upon the petitioners to show prejudice.[27] This they failed to do.
In sum, we affirm the Court of Appeals in finding that no material departure in these three cases from the requirements of RCW 2.36.050 has been demonstrated, nor has any actual prejudice been shown as a result of substantial, though inexact, compliance with its terms.

II
Even if RCW 2.36.050 were substantially complied with, as we have held, petitioners arguein the alternativethat it is unconstitutional. The issue is whether a statute that allows courts of limited jurisdiction to select jurors for jury panels "at random from the population of the area served by the court,"[28] is reconcilable with Const. art. I, § 22, which requires that "[i]n criminal prosecutions the accused shall have the right ... to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed."[29] Petitioners read the words "of the *1188 county" to require that a jury panel be comprised of jurors selected from the entire county. This argument is unpersuasive on its face.
In a case addressing the scope of the pool from which inquest juries are drawn, we have acknowledged that district court juries are drawn from a narrower population than inquest juries chosen from a "broader, countywide superior court source list."[30] After quoting RCW 2.36.050 with no hint of opprobrium, we noted that, in contrast to superior courts, "district courts may rely on jurors from a much narrower geographic range."[31]
This dicta was consistent with our past holdings. For example, in State v. Newcomb,[32] we traced the lineage of the manner of jury selection, and noted that the "rule was gradually changed until the law was satisfied if the jury was returned from any part of the county; and the words `jury of the county,' as used in our constitution, have never been held to mean more than that the jurors, when summoned, should come from some part of the county."[33] Furthermore, Newcomb held that "[t]here is no method provided for in the constitution for summoning jurors, nor does it attempt to define their qualifications. Hence such matters can be safely and properly left to legislative enactment."[34]
We have written simply that "[a]n essential element in selecting jurors is the element of chance. The ... people have found no better way and have made it the supreme test of sufficiency."[35] There is no persuasive dispute over the fact that randomness in the composition of the jury pools was preserved in these three cases. Petitioners detail a parade of horribles, arguing that the procedure they challenge "is no more `random' than if Shoreline's court staff decided to pick jurors from two square blocks in Lake Forest Park," and speculating that a court clerk could choose to "summon jurors only from one large apartment building...."[36] None of these "horribles" is our case. One can recognize a situation in which randomness is clearly preserved, as it was in these three cases where venire selection occurred in an area closely paralleling a district court electoral district, without giving rise to myriad hypotheticals wherein it might not be. Randomness is preserved by our recognition that a district court's electoral district serves as the population area from which its juries should be drawn.
Finally, petitioners heavily rely upon State ex rel. Fugita v. Milroy,[37] and accuse the Court of Appeals of ignoring it. There the defendant was charged with petit larceny in a police court in North Yakima, and the judge directed the police chief "to summon `sixteen good and lawful men' `from the body of your city,' ... to act as trial jurors in the case."[38] Upon appeal, we found it impermissible, under Const. art. I, § 22, that "the venire was especially restricted to a definite part of the county. We think the plain intent of the words `jury of the county' is that the defendant is entitled to have the venire extended *1189 to the body of the county, and that it may not be restricted to a less unit; at least, without express legislative sanction."[39] The italicized words carry with them the clear implication that the Legislature could have authorized the challenged procedure. What we found offensive was that the venire was "restricted to the municipality without the sanction of the legislature, at the caprice of the police judge."[40] It was only within that particular context, and lacking legislative guidance, that we wrote, "It would seem that the words `jury of the county' mean a jury of the whole county, and not a jury of some particular part of the county."[41]
In sum, we affirm the Court of Appeals in finding that petitioners have failed to demonstrate that RCW 2.36.050 violates Const. art. I, § 22.

CONCLUSION
The Court of Appeals' decision is affirmed in all respects. RCW 2.36.050 was substantially complied with in the selection of jury panels for these three consolidated cases, and petitioners have not demonstrated actual prejudice from the alleged failure to comply with it. Furthermore, RCW 2.36.050 conforms with Const. art. I, § 22 by preserving randomness in the selection of district court jury pools.
ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, JJ., GUY, J.P.T., and TALMADGE, J.P.T., concur.
NOTES
[1] Clerk's Papers at 22-26, 610-11.
[2] Id.
[3] Id. at 187, 514.
[4] Id. at 834.
[5] Id. at 899.
[6] Id.
[7] Id. at 475.
[8] Id. at 788, 925.
[9] Const. art. I, § 22 (emphasis added).
[10] State v. Twyman, 98 Wash.App. 508, 512, 983 P.2d 703 (1999).
[11] Id. at 510, 513, 983 P.2d 703 (citing RCW 2.36.050).
[12] (Emphasis added.)
[13] Twyman, 98 Wash.App. at 510, 983 P.2d 703.
[14] Id. at 511, 983 P.2d 703.
[15] RCW 3.38.070.
[16] Id. (emphasis added).
[17] RCW 3.38.050(6). Similarly, "[i]t also is the policy of this state to minimize the burden on the prospective jurors, their families, and employers resulting from jury service." RCW 2.36.080(2).
[18] RCW 3.34.060(1).
[19] RCW 2.36.050.
[20] Resp't's Br. at 14-15.
[21] RCW 2.36.050.
[22] (Emphasis added.) See also State v. Tingdale, 117 Wash.2d 595, 600, 817 P.2d 850 (1991) (writing of a former jury selection statute: "[W]e have interpreted this statute to be directive only. No one method is required. As long as the method chosen preserves the element of chance in selection of the panel, it has been found to be proper." (citing State v. Rholeder, 82 Wash. 618, 620, 144 P. 914 (1914); State ex rel. Murphy v. Superior Court, 82 Wash. 284, 286, 144 P. 32 (1914))).
[23] State v. Finlayson, 69 Wash.2d 155, 157, 417 P.2d 624 (1966) (quoting Rholeder, 82 Wash. at 620, 144 P. 914); see also State v. Rice, 120 Wash.2d 549, 562, 844 P.2d 416 (1993).
[24] Finlayson, 69 Wash.2d at 156, 417 P.2d 624.
[25] Id.
[26] Id.
[27] Rice, 120 Wash.2d at 562, 844 P.2d 416.
[28] RCW 2.36.050 (emphasis added).
[29] Const. art. I, § 22 (emphasis added).
[30] Carrick v. Locke, 125 Wash.2d 129, 145, 882 P.2d 173 (1994).
[31] Id. (emphasis added).
[32] 58 Wash. 414, 418, 109 P. 355 (1910).
[33] Id. (emphasis added). However, in Newcomb the law in question did "not attempt to provide for a jury from any division or district less than the whole county." Id. at 417, 109 P. 355.
[34] Id. at 420, 109 P. 355 (emphasis added). Supporting the constitutionality of RCW 2.36.050 is the fact that while the Washington Constitution has, since its enactment, defined the jurisdiction of superior courts, see Const. art. IV, § 6, it was left to the Legislature to determine the powers, duties and jurisdiction of district courts. Justices of the peace were the historical antecedents of today's district court judges. See RCW 3.30.015. Const. art. IV, § 10, provides:

The legislature shall determine the number of justices of the peace to be elected and shall prescribe by law the powers, duties and jurisdiction of justices of the peace: Provided, That such jurisdiction granted by the legislature shall not trench upon the jurisdiction of superior or other courts of record, except that justices of the peace may be made police justices of incorporated cities and towns.
[35] State ex rel. Murphy, 82 Wash. at 286, 144 P. 32 (emphasis added).
[36] Pet. for Review at 12.
[37] 71 Wash. 592, 129 P. 384 (1913).
[38] Id. at 593, 129 P. 384.
[39] Id. at 597, 129 P. 384 (emphasis added) (citing State ex rel. Lytle v. Superior Court, 54 Wash. 378, 103 P. 464 (1909)).
[40] Id. (emphasis added). This is quite apart from the perhaps more contemporary question of how randomness could possibly have been preserved by the police chief himself selecting a pool of 16 jurors for a criminal trial.
[41] Id. That this language was not meant to disavow Newcomb's limited construction of Const. art. I, § 22, just three years after Newcomb was issued, is plain from the fact that State ex rel. Fugita relied upon Newcomb. See id. at 597, 129 P. 384 (citing Newcomb).