201 P.3d 323 (2009)
STATE of Washington, Respondent,
v.
Louis F. LANCILOTI, Petitioner.
No. 81219-5.
Supreme Court of Washington, En Banc.
Argued November 18, 2008.
Decided February 12, 2009.
Ramona Coral Brandes, Eileen Farley, Northwest Defenders Association, Seattle, WA, for Petitioner.
King County Prosecutor's Office, Jennifer H.S. Atchison, James Morrissey Whisman, Seattle, WA, for Respondent.
CHAMBERS, J.
¶ 1 Our constitution guarantees "an impartial jury of the county in which the offense is charged to have been committed" in all "criminal prosecutions." Const. art. I, § 22. The primary question before us today is whether the legislature violated this guaranty when it allowed King County to divide itself into two superior court jury districts. We conclude that the legislature had the *324 plenary power to enact this legislation, affirm the superior court, and remand.

BACKGROUND
¶ 2 King County holds superior court in two locations: the King County courthouse in Seattle and the Norm Maleng Regional Justice Center in Kent. Until recently, potential jurors were summoned to either courthouse randomly, without regard to proximity. By the late 1990s, judges began to notice that juror response to the summons was not random. Instead, jurors were more likely to appear if summoned to the courthouse closer to their homes. Judge Michael Fox also suspected that distance to the courthouse had a disproportionate impact on poor and minority jurors, making juries overall less representative of King County.
¶ 3 Working with the Seattle-King County Department of Public Health, Judge Fox and court staff pulled together detailed demographic information about the county. They compared this data with juror response rates. Indeed, the data generally showed an inverse relationship between the distance from the summoning courthouse and the likelihood of appearing in response to a jury summons. The data also showed that "lower income and racial minority citizens were less likely than higher income and non-minority citizens to report to a court house more distant from their home." Clerk's Papers (CP) at 1548. This indeed, as Judge Fox has suspected, meant a poorer response rate from lower income and minority populations.
¶ 4 Concerned that juries were not representative of the larger community and after considerable debate, the King County Superior Court judges sought legislation or a constitutional amendment that would authorize dividing their county into two jury districts. CP at 1551; H.B. REP. 1769, 59th Leg., Reg. Sess. (Wash.2005); S.B. REP. 5691, 59th Leg., Reg. Sess. (Wash.2005). The legislature was persuaded and amended the jury source list statute. RCW 2.36.055.[1] Now, in counties "with more than one superior court facility ... the jury source list may be divided into jury assignment areas that consist of registered voters and licensed drivers and identicard holders residing in each jury assignment area." Id. Our legislature has also authorized the Administrative Office of the Courts (AOC) to designate and adjust jury assignment areas. Id. Working with Norris "Butch" Stussy (the state court administrator at the time), the King County judges and the AOC drew up two jury assignment areas. According to Administrator Stussy, the two jury districts proposed by the judges "are very similar in terms of race and ethnicity." Mot. for Accelerated Review, App. A.[2] Administrator Stussy approved the districts on behalf of the AOC. Id. Shortly afterward, the King County Superior Court promulgated King County Local General Rule (LGR) 18 and amended King County Superior Court Criminal Rule 5.1 to accommodate the two districts and direct cases appropriately. Roughly speaking, the "Seattle Case Assignment Area" includes all of the city of Seattle and everything north of Interstate 90 and the "Kent Assignment Area" includes everything else. Judges on their own motion or by request from the parties may order a panel drawn from the *325 whole county "whenever required for the just and efficient administration of justice." LGR 18(e)(2).[3]
¶ 5 Meanwhile, Louis Lanciloti was charged with possession of methamphetamine. The State alleges that early one morning in Seattle's Capitol Hill neighborhood, Lanciloti and a friend melted down methamphetamine crystals on the bottom of a Bud Light beer can with the intention of injecting the drug. Lanciloti's trial was scheduled to be held in the King County courthouse in downtown Seattle. Lanciloti sought a jury trial and challenged the constitutionality and legality of the statute and court rules. He did not move for a jury panel drawn from the county as a whole.[4] Rejecting his challenge, Judge Christofer Washington ruled:
[T]his Court finds RCW 2.36.055 and King County Local General Rule 18 do not violate Article 1, Section 22 of the Washington State Constitution. That constitutional provision provides that all defendants have the right to a trial "by an impartial jury of the county in which the offense is charged." This language does not mandate that the jury venire must be drawn from the entire county; the provision is satisfied as long as the jurors are drawn from a portion of the county. This Court also finds that the defendant's Sixth Amendment right to an impartial jury from a fair cross-section of the county has not been violated by the implementation of Local General Rule 18 because the defendant has not established that dividing King County into two jury assignment areas has resulted in the systemic exclusion or underrepresentation of a "distinctive group" within the county.
CP at 1539-40. Judge Washington certified the case for our review.

ANALYSIS
¶ 6 Lanciloti challenges the constitutionality of RCW 2.36.055, arguing that the constitutional injunction that juries be "of the county" means juries must be "of the whole county." "We presume statutes are constitutional and review challenges to them de novo." Ludvigsen v. City of Seattle, 162 Wash.2d 660, 668, 174 P.3d 43 (2007) (citing State v. Shultz, 138 Wash.2d 638, 642-43, 980 P.2d 1265 (1999)). Lanciloti bears the burden of showing the statute is unconstitutional. Heinsma v. City of Vancouver, 144 Wash.2d 556, 561, 29 P.3d 709 (2001). Relevantly, RCW 2.36.055 says:

In a county with more than one superior court facility and a separate case assignment area for each court facility, the jury source list may be divided into jury assignment areas that consist of registered voters and licensed drivers and identicard holders residing in each jury assignment area. Jury assignment area boundaries may be designated and adjusted by the administrative office of the courts based on the most current United States census data at the request of the majority of the judges of the superior court when required for the efficient and fair administration of justice.
(Emphasis added.) The Washington constitution provides that "[i]n criminal prosecutions the accused shall have the right ... to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." CONST. art. I, § 22. This follows the common law principle that juries should be drawn from the area of the alleged crime. See Steven A. Engel, The Public's Vicinage Right: A Constitutional Argument, 75 N.Y.U. L.REV. 1658, 1674 (2000). Historically, jurors were not just drawn from the area; they might also be witnesses to the crime or character of the accused. LLOYD E. MOORE, THE JURY: TOOL OF KINGS, PALLADIUM OF LIBERTY 38-39 (reprint 1975) (1973). Over time, the ideal jury evolved into a panel of impartial community members drawn from the community at large. The constitutional requirements that the jury be both impartial and "of the county" *326 balances those two principles. The question before us is whether "of the county" means "drawn from the whole county" or "drawn from the county."
¶ 7 We considered a somewhat similar question in State v. Twyman, 143 Wash.2d 115, 17 P.3d 1184 (2001). The defendants there were tried in district court. The jury panels for district courts are drawn from an area that is "generally coextensive" with the district's electoral district. Id. at 117, 120, 17 P.3d 1184 (citing RCW 2.36.050). The defendants argued that under article I, section 22 of the Washington Constitution, they were entitled to have juries drawn from the whole county, rather than from merely the rough area that elected the district court judge. We rejected the argument unanimously:
The issue is whether a statute that allows courts of limited jurisdiction to select jurors for jury panels "at random from the population of the area served by the court," is reconcilable with article I, section 22 of our state constitution, which requires that "[i]n criminal prosecutions the accused shall have the right ... to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." Petitioners read the words "of the county" to require that a jury panel be comprised of jurors selected from the entire county. This argument is unpersuasive on its face.
Twyman, 143 Wash.2d at 123, 17 P.3d 1184 (alterations in original) (citations omitted) (quoting CONST. art. I, § 22 and RCW 2.36.050). We held that the legislature could authorize a jury drawn from a smaller area. Id. at 124, 17 P.3d 1184.
¶ 8 Our legislature has a recent history of revising the methods for compiling the jury lists in an effort to make the pool of eligible jurors more inclusive and representative. In 1993, the legislature expanded the jury source lists to include not only registered voters but also licensed drivers and identity card holders. LAWS OF 1993, ch. 408, § 5, codified as RCW 2.36.055. In 2006, the legislature allowed those without a traditional address to register to vote. LAWS OF 2006, ch. 320, § 3, codified as RCW 29A.08.112. Since the juror list is based in part on the voter list, that has the impact of further increasing the potential jury source lists.
¶ 9 In the past, the legislature has also had other concerns. In 1910, we considered the legislature's power to enact a statute to ensure that jury panels were not drawn from only one part of the county. Essentially, the statute divided up each county into multiple districts and required that each jury panel be drawn from more than one district. State v. Newcomb, 58 Wash. 414, 418-19, 109 P. 355 (1910). We found the statute was within the legislature's plenary power to enact, noting:
Under the old rule of the common law, the jury was required to come from the vicinage or neighborhood of the place where the crime was alleged to have been committed, or the cause of action, if civil, arose; and it was a ground of challenge if some given number were not summoned from the hundred in which such place lay. This rule was gradually changed until the law was satisfied if the jury was returned from any part of the county; and the words "jury of the county," as used in our constitution, have never been held to mean more than that the jurors, when summoned, should come from some part of the county.

Newcomb, 58 Wash. at 418, 109 P. 355, cited with approval in Twyman, 143 Wash.2d at 123-24, 17 P.3d 1184 (emphasis added). Both Newcomb and Twyman concluded "`such matters can be safely and properly left to legislative enactment.'" Twyman, 143 Wash.2d at 124, 17 P.3d 1184 (quoting Newcomb, 58 Wash. at 420, 109 P. 355).[5] Such a legislative enactment appears here.
¶ 10 Lanciloti relies heavily on a case where there was no legislative authorization for the process used to assemble the jury pool, State ex rel. Fugita v. Milroy, 71 Wash. 592, 129 P. 384 (1913). In Fugita, a police court judge sent an officer out onto the *327 streets of North Yakima and told him to bring back 16 "`good and lawful men' `from the body of [the] city.'" Id. at 593, 129 P. 384. The statute that created the police court said nothing about the appropriate jury pool or source list. The court looked at article I, section 22's injunction that accused get "an impartial jury of the county" (emphasis added) and vacated the conviction, noting:
We think the plain intent of the words "jury of the county" is that the defendant is entitled to have the venire extended to the body of the county, and that it may not be restricted to a less unit; at least, without express legislative sanction. State ex rel. Lytle v. Superior Court, 54 Wash. 378, 103 Pac. 464 (1909). If it may be restricted to the municipality without the sanction of the legislature, at the caprice of the police judge, we can see no reason why he might not continue the restriction to a precinct or a ward. It would seem that the words "jury of the county" mean a jury of the whole county, and not a jury of some particular part of the county.
Fugita, 71 Wash. at 597, 129 P. 384 (emphasis added). But all that Fugita relevantly holds is that a trial judge may not, on his or her own initiative, draw the jury from something less than the whole county. It does not purport to limit the legislature's power to manage jury districts.
¶ 11 Other states with state constitutional provisions similar to our article I, section 22 have found that the legislature has considerable power to shape jury selection within the injunction that juries be "of the county." For example, in 1892, the Tennessee Supreme Court affirmed legislation that divided one county into 17 districts and sent all crimes arising in 5 of those districts to one courthouse. Ellis v. State, 92 Tenn. 85, 20 S.W. 500, 501 (1892). The defendant challenged the makeup of the jury panel, noting that the state constitution required juries "`of the county,'" and, like Lanciloti, contended that meant of the whole county. Id. at 503 (citing TENN. CONST. art. I, § 9). The court rejected the argument, ruling that "[i]f the jury is made up of citizens of any part of the county, who are otherwise qualified, the requirement of the constitution is complied with." Id. Similarly, the Arkansas constitution provides that the accused has the right to a trial in front of jurors "of the county." ARK. CONST. art. 2, § 10. The Arkansas Supreme Court found that this provision was not violated by a statute that divided counties into smaller districts for the purposes of selecting juries. Terry v. State, 149 Ark. 462, 470, 233 S.W. 673 (1921). It reasoned that:
[t]he guaranty of the Constitution is that the accused shall enjoy the right to a trial before a jury of the county in which the crime was committed.... The Northern District of Prairie County and the Southern District of Prairie County are alike parts of the county, and the guaranty of the Constitution is met when jurors are selected from either division of the county.
Id.; accord State v. Kemp, 34 Minn. 61, 66, 24 N.W. 349 (1885); State v. Bolln, 10 Wyo. 439, 70 P. 1, 5 (1902).
¶ 12 We agree and hold that the legislature was within its power to authorize counties with two superior courthouses to divide themselves into two districts.[6]
¶ 13 Lanciloti also, in essence, brings a facial challenge to the constitutionality of RCW 2.36.055 and its implementation under the federal constitution. The Sixth Amendment guarantees "the right to ... an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. CONST. amend. VI. Among other things, federal Sixth Amendment jurisprudence prohibits the systemic exclusion of "distinctive groups" from the jury pools. Duren v. Missouri, 439 U.S. 357, 363-64, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Lanciloti *328 notes that the populations of the two King County jury districts vary based on income, home ownership, and education. It is not clear from the record before us whether the jury source lists mirror the differences, though that may be a reasonable inference. However, assuming for now that is true, as a facial matter, he has not carried his burden of showing that these demographic differences amount to a systemic exclusion of a distinctive group.[7] Based on the scant factual record of the actual makeup of the jury source lists and without prejudice to a future challenge, we decline to substantively consider this unripe claim at this time. For the same reason, and with the same proviso, we decline to reach the remainder of Lanciloti's challenges.

CONCLUSION
¶ 14 Lanciloti has not met his burden of showing that RCW 2.36.055 is unconstitutional as written or as applied, thus far, in his case. We remand for further proceedings consistent with this opinion.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, SANDERS, OWENS, FAIRHURST, J. JOHNSON, and STEPHENS, JJ.
MADSEN, J., concurs in result only.
NOTES
[1] According to the legislative findings:

The legislature finds that superior courts with more than one superior court facility are asking some jurors to travel excessively long distances to attend court proceedings. In these cases, the legislature further finds that consideration of a juror's proximity to a particular courthouse can be accommodated while continuing to provide proportionate jury source list representation from distinctive groups within the community. The legislature intends to lessen the burdens borne by jurors fulfilling their civic duties by providing a mechanism that narrows the geographic area from which the jurors are drawn while maintaining a random and proportionate jury pool.
LAWS OF 2005, ch. 199, § 1.
[2] Stussy's letter was attached as exhibit 2 to Judge Joan E. DuBuque's decision in a similar case heard about the same time. A copy of Judge DuBuque's opinion in the clerk's papers does not have the exhibits attached. Louis Lanciloti attached a copy of Judge DuBuque's opinion, with the exhibits, to his motion for review. This may not comply with RAP 10.3(a)(8) and RAP 10.4(c), which limits appendixes to either materials in the record or to things like statutes and rules. However, given that the document was attached to a Washington superior court decision, was generated by the AOC, was not objected to, and is useful for framing the issue, we take judicial notice of it.
[3] LGR 18 was suspended effective in 2008.
[4] Although immaterial to our analysis, we note that the jury panels present the day of the hearing were drawn from the county as a whole, so if the trial had been held that day, he would have had the type of panel he claims is constitutionally required.
[5] Lanciloti argues that Twyman is distinguishable because it considered a legislatively created court of limited jurisdiction, not a constitutionally created court of general jurisdiction. However, by its plain terms, article I, section 22 does not distinguish between trials in superior or inferior courts. Instead, it speaks in terms of "criminal prosecutions." CONST. art. I, § 22.
[6] We caution, however, that our analysis might have been different if Lanciloti had shown that anyone had been excluded from jury service by the way the boundaries had been drawn (for example, to save the cost of reimbursing mileage) or if he had been tried, over objection, before a jury drawn from a district other than where the crime was alleged to have been committed, or if the clear legislative purpose had not been to create a broader and more representative jury pool. But cf. LAWS OF 2005, ch. 199, § 1.
[7] Lanciloti does not argue to this court that any particular group has been excluded from either jury pool. Instead he notes three demographic differences between the two jury districts, as of the last census. First, 48 percent of those living in the northern area have at least a bachelor's degree. Only 24 percent of those in the southern area have one. Second, that the median home value in the northern area was $286,000. It was only $180,000 in the southern area. Finally, the median income in the northern area was $57,000. It was only $50,000 in the southern area. Opening Br. of Pet'r at 22 (citing CP at 72-93). He did argue below that the racial demographic variance in King County was constitutionally problematic. King County over all is 5.5 percent Hispanic; the southern region is 7.18 percent Hispanic; the northern region 4.58 percent. CP at 67, 77. However, he did not renew this argument in his primary briefing to this court, and we decline to consider it, again, without prejudice to a future challenge.